Ruffin, C. J.
 

 In the latter part of the year 1838 the plaintiff, P. N. Waddell, made a parol contract with the defendant for the sale of a plantation, situate on the Cape Fear river, near Wilmington, of which the plaintiff and his wife in her right were seized in fee. The price was $4000, payable in four equal instalments; of which the first was to be paid on the first of January, 1839, upon receiving a deed, and the other three to be paid on the 1st of January, 1840, 1841 and 1842, and for the same the defendant was to execute his bonds with approved personal security. Under this contract the defendant took possession immediately, with the consent of the plaintiff; and on the 1st ol January, 1839, he paid to the agent of the plaintiff in Wilmington, (the plaintiff himself residing in Orange,) the first instalment of $1000. At that time the plaintiff was absent from the State on a journey to Louisiana, and it was agreed between his agent and the defendant, in order to avoid any inconvenience or risk to the defendant from the death of the plaintiff, that, the agent should not pay over the money until the plaintiff should re. turn, and, together with his-wife, make the defendant a deed. The plaintiff did return in the succeeding summer, and on
 
 *476
 
 the 15th of August, 1839, he and his wife executed a, conveyance t0 defendant, by bargain and sale, which they duly acknowledged before a Judge, so as to make the deed .effectual against the wife; .and the plaintiff sent it to his agent •with directions to deliver it to the defendant, and to receive his bonds, according to the contract, for the residue of the purchase-money. The agent, W; C. Lord, shortly thereafter offered the de.ed to the defendant, who objected to it on the grounds, that Mrs. Waddell had not joined her husband in the warranty, and that it did not describe the lands by corners, course, and distance, bu.t only by its name of “Buehoi,” and by calling for the lines of the adjoining proprietors. For these reasons the defendant declined receiving the deed. After further conferences, the defendant requested Lord to let him have the deed to lay before counsel; and for that purpose ,the deed was delivered to th.e defendant, who, .after consulting counsel, still .expressed his dissatisfaction, and returned the deed to Lord as the plaintiff’s agent.
 

 The controversy between the parties is, whether the deed in question svas subsequently accepted by the defendant, so as thereby to execute the parol contract of sale or not. The bill states that it was thus accepted in December, 1839; and that thereupon the defendant, in discharge of the second payment, gave to the plaintiff a bond on one Gibbs, and offered his own two notes for the remaining instalments; but that, upon the plaintiff mentioning that he was entitled to sureties on'those two notes, the defendant said he would procure them and return the notes, when completed, to Lord, the argent; and that, in the mean while, it was agreed that the de=fendm't should leave the deed in the possession of Lord, as a security to the plaintiff for the compliance of the defendant. The bill then states that, upon the completion of this arrangement, the plaintiff returned Gibbs’ bond to the defendant, upon the understanding that the defendant’s own note should be fully executed by
 
 the
 
 sureties in a few days, and that then all three should be re-delivered together. And the bill further charges, that, by the direction of the defendant, the deed was kept by Lord, as a security to the plaintiff until the residue of the purchase money should' be paid or secur
 
 *477
 
 ed, as stipulated. The defendant, however, did more in the business; and in the month of January following he gave notice that he should not give his notes, and abandoned the premises and instituted suit against Lord for the $1000, that had been paid.
 

 The bill was filed in February, 1840, and prays that the land may be declared to be a security for the three last instalments of the purchase money, and that the defendant maybe decreed to perform his agreement by assigning and delivering Gibbs’ bond, and executing his own notes with sufficient sureties; and that, in default of payment of the monies then due, or as they might fall due, the same should be raised out of the land by sale or otherwise; and for general relief.
 

 The answer, after admitting that Lord had delivered the deed to the defendant to enable him to have the opinion of counsel on it, and that he returned it to Lord with objections, denies that the deed was ever delivered to the defendant in any other manner or for any other purpose, or that he at any time expressed himself satisfied with the deed, or accepted, or agreed to accept if. The answer denies that the defendant passed Gibbs’ bondtotheplaintiff as a payment; and states that, at the time alluded to, the defendant informed the plaintiff of his objections to the deed, but stated to him that, upon getting a good deed, he was ready to direct the 1000 dollars, then deposited with Lord, to be paid over, and to give Gibbs’ bond, due January 1st, 1840, for the second payment, and to execute his own bonds for the residue; and that Waddell said, he would take Gibbs’ bond, if it would answer as a payment to certain creditors of his in Wilmington, and requested the defendant to put the bond in his possession, that he might submit it to those creditors. The answer states that Gibbs’ bond was delivered to Waddell for that purpose, and for that only; and that, after going out with it, he returned and said that it would suit, and then gave it back to the defendant; and it is then further stated, that Lord wrote two notes for the residue of the price, and that the defendant sigued them and took' them for the pur
 
 *478
 
 p0ge 0f procuring their execution by some person as his surety-
 

 The answer avers that no part of the contract was then 00118^61.6^ as COmp'eted; but that the understanding was, that Waddell should make another and proper deed, and that as soon as the defendant should be satisfied as to the title, he would deliver Gibbs’ and his own bonds, and not otherwise. And the answer further denies that the defendant delivered the deed to Lord as a security for the plaintiff, or that he ever had it in possession excepting only for the purpose of submitting it to counsel. The answer then insists that as the contract was not in writing, it is void and cannot be enforced under the act of 1819.
 

 The deed of August, 1839, is identified by and annexed to the depositions o£ William C. Lord and Alexander Anderson, who are the material witnesses in the cause. The former, after stating the terms of the original contract, the offer of the deed to the defendant by him as the agent of the plaintiff, and the refusal of it in the summer or autumn of 1839, as already set forth, then deposes, that, upon information given by him of that refusal to Waddell, the latter came to Wilmington in December, 1839, and had several interviews with Hewitt in the presence and at the office of the witness, upon the subject of the execution of their contract; that at first Hewitt insisted on his former objections to the deed then in the possession of the witness; but that, after several conferenees, Hewitt agreed to accept the title and deed as it was-After having done so, Hewett requested the plaintiff to take a bond on R. Gibbs for the next payment; and to that the plaintiff, after ascertaining that he could use the bond without loss, assented on his part. Hewitt then requested the witness to write notes for the two remaining payments, to be executed by Hewitt and one Godwin, to whom the defendant said he would apply to become his surety; and the witness did so, and Hewitt signed the notes and took them, to obtain Godwin’s signature.
 

 The witness further states, that Waddell informed the defendant that he had at home the title papers for the land, from which he could obtain the metes and bounds, and a
 
 *479
 
 greed that he would at any time furnish them to the defendant, that he might have the land surveyed, and also would, at any subsequent time, execute such farther title as Hewitt might wish. Hewitt then expressed himself satisfied, and said he was glad the matter was arranged, and sorry he had put Waddell to the trouble of coming from Orange. Wad-dell then expressed the wish to return home; and said that, as the business was then settled, he supposed it was unnecessary for him to wait for Hewitt’s return from Godwin’s, who lived in the country; to which the other party assented. The defendant then delivered to the witness Gibbs’ bond in payment, and promised to bring him the other notes, duly executed, in a few days; and Waddell, after directing the application of the bond of Gibbs and the other funds, left Wilmington for his residence. Three or four days afterwards, the witness states that Hewitt came to him without having obtained Godwin’s signature, and proposed to give another person for his endorser; to which the witness assented; and the defendant went away for the purpose of getting the signature of this last person. In the course of a few hours, however, he returned to the witness without the signature, and, after again alleging that the title was not good, declined doing any thing further in the matter; upon which the witness, after stating to him that Gibbs’ bond had been received as a payment only on the understanding that the other two bonds should be executed by good sureties and delivered, returned Gibbs’ bond to the defendant, and gave him notice that he would be looked to for a payment in cash on the 1st of the next month, of the $1000 that would be then due.
 

 Alexander Anderson states, that Waddell was indebted to him and another person in Wilmington, and that in December, the plaintiff and the defendant came togetherto him to ascertain, whether the note of R. Gibbs would be received by his creditors as a payment from Waddell; that Hewitt stated, that he was then making Waddell a cash payment on the purchase of the Buchoi plantation, and that said bond was equal to cash, as Mr. Gibbs had promised to pay it on the 1st day of January next ensuing, or out of the first rice he sent to market; and, that upon the statement being made by
 
 *480
 
 Hewitt, the witness agreed, that should Waddell offer that k°nc*, it should be received; and then the parties went away on their return to Lord’s.
 

 The testimony oí Mr. Lord sustains, we think, the statements of the bill lipón the poiut of the delivery of the deed to the defendant, or rather of his acceptance of it, as being in the hands of Lord for him, which is tantamount to a delivery to himself personally. Were not the statements of the answer upon this subject in opposition to those of the witness, there would be no hesitation in ’ declaring the fact to be as stated by the witness. It is, however, the settled law of the court, that the answer, so far as it is responsive to the bill, is evidence for the defendant, unless upon its face it be false, or contradictory, or evasive, or be contradicted by two witnesses, or, at least, by one, corroborated by circumstances. It might, indeed, be questioned, whether this case comes within the rule. The bill is not brought for specific execution of a contract of sale; but rather to enforce a security, by way of a kind of equitable mortgage,- created by the deposit of this deed with the plaintiff or his agent'. The gist of the case, therefore, is the deposit of the deed, and its delivery and acceptance only come in incidentally. But supposing the case to come fully within the rule alluded to, as probably, it does, it seems to the'court, that, judicially speaking and giving to the answer all the weight it can claim upon artificial principles, the decree must be according to the statement of the witness and not according to that of the party. In this point of view, it is essential to ascertain, whether the deed was accepted; for, if it was- not, the contract, as an executory parol one, is void under our statute of frauds. We think there was a delivery and acceptance — though certainly the point might be clearer than it is.
 

 Lord states precisely and positively, that the defendant, as the result of the conferences in- December, 1839, accepted the title and deed as it was. Now, this was in the office of Lord and with a knowledge that the deed had been already acknowledged by the vendor and his wife, and that Lord had it there for the use of the defendant. Each party expressed himself as considering their preceeding misunderstand
 
 *481
 
 ing
 
 settled
 
 and pleased that it was settled. Now, the only misunderstanding that had existed was, whether the defendant 'should accept
 
 that
 
 deed. When he determined to accept it, the deed being then present, and promised to make a payment in Gibbs’ bond in anticipation of the instalment that would be due the succeeding month; nothing less can be understood than, that the parties then considered that Waddell had done all in relation to that deed; that he was to do, or could do. When Waddell said, “I offer this deed to you,” and the other replied, “I accept it,” it amounted to a delivery, although it did not pass from the hand oí the one to that of the other. It was out of Waddell’s hands and cohtrol; and must, therefore, be considered as delivered. It is true that Lord was Waddell’s agent; but alter that transaction, he was not his agent, to deliver the deed, but merely to keep it, as a deed belonging to Hewitt, for the purpose of compelling Hewitt to pay or secure a balance of the purchase money. The answer, indeed, denies that the defendant did pass Gibbs’ bond to the plaintiff, even conditionally. But it admits there was a proposition to that effect,- and that notes were drawn for the defendant and his sureties! to give. Why was that done? The witness says, it was, because the defendant was satisfied, and had accepted the deed,- and was proceeding to fulfil the contract on his part. The answer says, it was only to be in readiness to do so, when the plaintiff and his wife should afterwards make a deed that would satisfy him. Which of the two accounts seems most probable — most likely to gain credence? Why, at
 
 that
 
 time, propose a mode of paying an instalment due within a few days, and propose notes for the other instalments, if nothing was to be done, until a further deed should be made; when, according to the defendant’s objection, no satisfactory deed could be made until there had been a survey, and, to effect that, the vendor would have to return to Orange for the title' papers and then again to Wilmington. But the' answer is not only contradicted, with respect to the bond of Gibbs', by the testimony of Lord, but also by that of Anderson. He deposes, that Hewitt stated explicitly, that he was
 
 then making a payment
 
 to Waddell, and that he considered Gibbs’ bond
 
 *482
 
 equal to cash. Upon this point, then, both of the witnesses aSree> an^ the fact is a very important one as a test of the credibility of the answer and also as showing the intention of the parties and the real transaction between them. For, as the dispute had been, whether the defendant should accept the deed which had been made, when we find him afterwards making a payment on the contract, and into the hands of the very person from whom, as the agent of the vendor, he had refused to take the deed, it furnishes a strong presumption, independant of the positive testimoiiy of the witness, that the defendant changed his mind, did accept the deed, and that the possession was retained by Lord after-wards merely as a restraint upon the defendant’s power of alienation, and as a temporary security to the vendor, until the vendee should give notes as stipulated. But it was said, that Loid states, the plaintiff was to do other things, and that, according to the last agreement, he bound himself to furnish the boundaries, and, after a survey, to make a proper conveyance, and that it does not appear he has done any thing of the kind. These stipulations of the plaintiff, however, do not at all conflict with the averment, that the defendant accepted the deed that was made; but they rather sustain it. They amount to a new agreement for
 
 further
 
 assurance, and imply that, in the mean time, the vendee had accepted and held under the assurance already made. When upon the application of the defendant for the boundaries of the land, and for a conveyance in conformity to a survey, the plaintiff shall refuse compliance, it will be time enough for us to declare the consequences — merely as evidence of the manner in which the parties regarded what had been done, an agreement of the kind last-mentioned imports, not that what had been done was null, but that it should stand, and be confirmed, if requisite, by whatever was needful to its confirmation.
 

 It must, therefore, be declared, that the deed from Waddell and wife was delivered to and accepted by the defendant, and that it was left by him in the hands of the witness Lord, for the benefit of the plaintiff F. N. Waddell, and as a security for the fulfilment of the contract of purchase on the part of the
 
 *483
 
 defendant; and that the land is, in this court, to be regarded as a security for such part of the purchase money as remain unpaid, and the same, if not paid by the defendant within a reasonable time, must be raised out of the land by sale or otherwise; and it must be referred to the master to en-quire of the sums due in the premises, together with the interest thereon.
 

 Per Curiam, Ordered accordin iy«